United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHAD S.,

         Plaintiff,

    v.

NANCY A. BERRYHILL,

         Defendant.

Case No.  18-cv-07295-DMR

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 21, 24

Plaintiff Chad S. moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Plaintiff not disabled and therefore denied him application for benefits under Title II and Title XVI of the Social Security Act.  [Docket Nos. 21 ("Pltf. Mot."), 24 ("Pltf. Reply").]  The Commissioner cross-moves to affirm.  [Docket No. 24 ("Def. Mot.").]  For the reasons stated below, the court grants Plaintiff's motion and denies the Commissioner's cross-motion.

**I.    PROCEDURAL HISTORY**

Plaintiff filed an application for Social Security Disability Insurance benefits on February 4, 2016, and an application for Supplemental Security Income on January 15, 2016, alleging a disability onset date of February 15, 2015.  A.R. 90-91, 103-104, 262.   His applications were initially denied on July 15, 2016 and again on reconsideration on September 1, 2016.  A.R. 116-17, 146-47, 155-60.   On October 17, 2016, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ").  A.R. 161-62.  The hearing was held on October 10, 2017 and January 23, 2018.  A.R. 33-89.  After the hearing, ALJ T. Patrick Hannon issued a decision finding Plaintiff not disabled.  A.R. 13-32.  The ALJ determined that Plaintiff has the following severe impairments: history of fractures of right tarsal bones and obesity.  A.R. 18.  The ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform the full range of sedentary work,

as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a).  Accordingly, the ALJ concluded that Plaintiff is not disabled.

The Appeals Council denied Plaintiff's request for review on September 28, 2018.  A.R. 1-6.  The ALJ's decision therefore became the Commissioner's final decision.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011).  Plaintiff then filed suit in this court pursuant to 42 U.S.C. § 405(g).

## II.     THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months.  *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows:

1.     At the first step, the ALJ considers the claimant's work activity, if any.  If the claimant is doing substantial gainful activity, the ALJ will find that the claimant is not disabled.

2.     At the second step, the ALJ considers the medical severity of the claimant's impairment(s).  If the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 416.909, or a combination of impairments that is severe and meets the duration requirement, the ALJ will find that the claimant is not disabled.

3.     At the third step, the ALJ also considers the medical severity of the claimant's impairment(s).  If the claimant has an impairment(s) that meets or equals one of the listings in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings") and meets the duration requirement, the ALJ will

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

1    find that the claimant is disabled.

2         4.    At the fourth step, the ALJ considers an assessment of the claimant's residual

3    functional capacity ("RFC") and the claimant's past relevant work.  If the claimant can still do his

4    or her past relevant work, the ALJ will find that the claimant is not disabled.

5         5.    At the fifth and last step, the ALJ considers the assessment of the claimant's RFC

6    and age, education, and work experience to see if the claimant can make an adjustment to other

7    work.  If the claimant can make an adjustment to other work, the ALJ will find that the claimant is

8    not disabled.  If the claimant cannot make an adjustment to other work, the ALJ will find that the

9    claimant is disabled.

10        As part of the step five assessment, the ALJ is "responsible for providing evidence that

11   demonstrates that other work exists in significant numbers in the national economy."  20 C.F.R. §

12   404.1560(c).  The ALJ can meet this burden either by relying on the testimony of a vocational expert

13   or by reference to the Medical-Vocational Guidelines (the "Grids").  *Lockwood v. Comm'r Soc. Sec.*

14   *Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010); *see* 20 C.F.R. § Pt. 404, Subpt. P, App. 2.

### III.    STANDARD OF REVIEW

16        Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the

17   Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's

18   denial of disability insurance benefits when the ALJ's findings are based on legal error or are not

19   supported by substantial evidence in the record as a whole."  *Tackett v. Apfel*, 180 F.3d 1094, 1097

20   (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could

21   lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*,

22   402 U.S. 389, 401 (1971).  It is more than a mere scintilla, but less than a preponderance.  *See Saelee*

23   *v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted).  When performing this

24   analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating

25   a specific quantum of supporting evidence."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th

26   Cir. 2006) (citation and quotation marks omitted).

27        If the evidence reasonably could support two conclusions, the court "may not substitute its

28   judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112

United States District Court
Northern District of California

1    F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "Finally, the court will not reverse an ALJ's

2    decision for harmless error, which exists when it is clear from the record that the ALJ's error was

3    inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035,

4    1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

5         The court has reviewed the entire administrative record; however, for the purposes of

6    brevity, the court cites only those facts that are relevant to its decision.

7    **IV.    ISSUES PRESENTED**

8         Plaintiff argues that the ALJ erred in weighing the medical opinions and in assessing his

9    credibility.  As a result of these errors, Plaintiff contends that the ALJ erred in assessing Plaintiff's

10   RFC and in his step five finding.

11   **V.    DISCUSSION**

12        **A.    Medical Opinions**

13             **1.    Legal Standard**

14        Courts employ a hierarchy of deference to medical opinions based on the relation of the

15   doctor to the patient.  Namely, courts distinguish between three types of physicians: those who treat

16   the claimant ("treating physicians") and two categories of "nontreating physicians," those who

17   examine but do not treat the claimant ("examining physicians") and those who neither examine nor

18   treat the claimant ("non-examining physicians").  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

19   1995).  A treating physician's opinion is entitled to more weight than an examining physician's

20   opinion, and an examining physician's opinion is entitled to more weight than a non-examining

21   physician's opinion.  *Id.*

22        The Social Security Act tasks the ALJ with determining credibility of medical testimony and

23   resolving conflicting evidence and ambiguities.  *Reddick*, 157 F.3d at 722.  A treating physician's

24   opinion, while entitled to more weight, is not necessarily conclusive.  *Magallanes v. Bowen*, 881

25   F.2d 747, 751 (9th Cir. 1989) (citation omitted).  To reject the opinion of an uncontradicted treating

26   physician, an ALJ must provide "clear and convincing reasons."  *Lester*, 81 F.3d at 830; *see, e.g.*,

27   *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection of examining

28   psychologist's functional assessment which conflicted with his own written report and test results);

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1  *see also* 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188 (July 2, 1996).  If another doctor

2  contradicts a treating physician, the ALJ must provide "specific and legitimate reasons" supported

3  by substantial evidence to discount the treating physician's opinion.  *Lester*, 81 F.3d at 830.  The

4  ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting

5  clinical evidence, stating his interpretation thereof, and making findings."  *Reddick*, 157 F.3d at 725

6  (citation omitted).  "[B]road and vague" reasons do not suffice.  *McAllister v. Sullivan*, 888 F.2d

7  599, 602 (9th Cir. 1989).  This same standard applies to the rejection of an examining physician's

8  opinion as well.  *Lester*, 81 F.3d at 830-31.  A non-examining physician's opinion alone cannot

9  constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v.*

10  *Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir.

11  1984), though a non-examining physician's opinion may be persuasive when supported by other

12  factors.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that opinion by

13  "non-examining medical expert . . . may constitute substantial evidence when it is consistent with

14  other independent evidence in the record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of

15  treating physician's opinion given contradictory laboratory test results, reports from examining

16  physicians, and testimony from claimant).  An ALJ "may reject the opinion of a non-examining

17  physician by reference to specific evidence in the medical record."  *Sousa v. Callahan*, 143 F.3d

18  1240, 1244 (9th Cir. 1998).  An opinion that is more consistent with the record as a whole generally

19  carries more persuasiveness.  *See* 20 C.F.R. § 416.927(c)(4).

20      **2.**      **Analysis**

21        Plaintiff argues that the ALJ erred in weighing the opinions of Dr. Elizabeth McCraven,

22  M.D. and Dr. Ralph Wood, M.D.

23        **a.**      **Elizabeth McCraven, M.D.**

24        Dr. McCraven has been Plaintiff's primary care physician since August 2015, during which

25  time she has seen him approximately once a month.  A.R. 788.  In September 2017, Dr. McCraven

26  submitted a medical source statement in support of Plaintiff's applications.  A.R. 787-792.  She

27  explained that Plaintiff experiences pain in his right foot due to a nonhealing metatarsal fracture.

28  A.R. 788.  According to Dr. McCraven, the pain is constant, chronic, and moderate to severe in

nature.   A.R. 788.   The pain limits Plaintiff's ability to stand or walk and gets worse with weightbearing.  A.R. 788.  She opined that Plaintiff can stand or walk approximately 15 minutes at one time and less than 2 hours total in an 8 hour workday.  A.R. 789.   Dr. McCraven wrote that Plaintiff would likely be off-task 25% or more of a typical workday and he would likely be absent from work more than 4 days per month.  A.R. 792.  She also explained that Plaintiff is on chronic opioid pain medications that cause drowsiness, and that the side effects of the medications render Plaintiff incapable of even "low stress" work.  A.R. 788, 792.

The ALJ assigned only partial weight to Dr. McCraven's opinion for two reasons.  First, he found that the limitation to standing and walking less than 2 hours per day is "overly permissive in light of the claimant's normal objective examinations."  A.R. 24.  Notably, the ALJ did not cite any specific records in discussing this portion of Dr. McCraven's opinion so it is unclear which records supposedly undermine her opinion.  In any case, the ALJ rejected Dr. McCraven's standing and walking limitations based on the medical evidence but mischaracterized several key portions of the record.  For example, he wrote that the "record reflects a conservative course of treatment."  A.R. 21, 23.   To the contrary, Plaintiff takes prescription opioids (Norco), which are typically not considered a conservative treatment.  *See O'Connor v. Berryhill*, 355 F. Supp. 3d 972, 985 (W.D. Wash. 2019) ("[P]ain treatment with opioid analgesics generally is not considered conservative.") (citing *Kager v. Astrue*, 256 F. App'x 919, 923 (9th Cir. 2007)).  In addition, Plaintiff has had a chronic staph infection in his right foot since early 2015, which is periodically treated with IV antibiotics.  A.R. 74, 378, 413, 502, 598.  Further, two separate podiatrists advised Plaintiff against surgery because of his increased risk due to diminished vascular status rather than because surgery was unnecessary.  A.R. 467, 473.  Therefore, the lack of surgical intervention cannot serve as the basis for finding that Plaintiff's treatment has been conservative.  The ALJ also wrote that Plaintiff's "allegations of disabling right foot fractures are inconsistent with imaging studies that reveal stable findings despite incompletely healed fractures."  A.R. 21; *see* A.R. 644.  However, the records cited by the ALJ show that "stable" means that Plaintiff's condition did not significantly change from one examination to the next.  *See, e.g.*, A.R. 532 ("Mild subperiosteal new bone formation is seen along the neck and distal diaphysis of the great toe metatarsal, essentially stable since the prior study, and

correspondingly chronic."). Relatedly, the ALJ stated that Plaintiff's metatarsal fractures appeared to be healing in February 2015, but the record he cites appears to state the opposite. *See* A.R. 532-33. The examining physician found a new transverse facture, new bone formation, marked soft tissue swelling, and mildly progressive patchy demineralization. A.R. 532. The doctor did not write anything indicating that Plaintiff's condition was improving. Accordingly, the ALJ's inaccurate characterization of the medical evidence is not a specific and legitimate reason to reject Dr. McCraven's opinion. *See Kelly v. Berryhill*, 732 F. App'x 558, 560 (9th Cir. 2018) ("Where an ALJ's reasoning is belied by the record, it cannot constitute a 'specific and legitimate' reason for rejecting the controverted opinion of a treating physician.").

The ALJ's second reason for discounting Dr. McCraven's opinion was that her "off-task" and "low stress" limitations are not supported by objective medical evidence but rather based entirely on Plaintiff's subjective reports. A.R. 24-25. A medical opinion based on subjective complaints may be discounted when the ALJ properly discredits a claimant's credibility. *Tonapetyan*, 242 F.3d at 1149. However, "if the ALJ erred in discounting the claimant's credibility, then the ALJ may not use the claimant's credibility as a basis to reject an examining provider's opinion." *Jeremy C. v. Comm'r, Soc. Sec. Admin.*, 2020 WL 1467095, at *8 (D. Or. Mar. 25, 2020). As discussed below, the ALJ erred in discrediting Plaintiff's credibility. Therefore, Dr. McCraven's opinion cannot be rejected solely on the basis that it relies in part on Plaintiff's subjective reports. In addition, Dr. McCraven's ample treating notes record her observations of Plaintiff's condition over time, including his chronic staph infection, redness and swelling in his right foot, his "poorly healing fracture," and his reactions to medication. *See* A.R. 502, 506, 598, 610. Therefore, the ALJ's assertion that Dr. McCraven's "off-task" and "low stress" limitations were based only on Plaintiff's subjective reports is speculative.

In sum, the ALJ did not offer specific and legitimate reasons to reject Dr. McCraven's opinion.

### b.   Ralph Wood, M.D.

Dr. Wood performed a consultative examination in April 2017. A.R. 578-88. He opined that "[e]ven with a cane and/or walker I do not think that [Plaintiff] can stand more than one or two

United States District Court
Northern District of California

1   hours out of an eight-hour at stretch [*sic*] that I might be stretching it."  A.R. 580.  His medical

2   source statement records that Plaintiff cannot stand for more than 15 minutes, walk for more than

3   10 minutes, or sit for more than 2 hours total in an 8 hour workday.  A.R. 584.

4          The ALJ assigned great weight to Dr. Wood's opinion.  According to the ALJ, Dr. Wood

5   "opined that the claimant was capable of performing work consistent with the sedentary exertional

6   level."  A.R. 24.  However, the limitations assessed above do not show that Plaintiff is capable of

7   the full range of sedentary work.  The regulations define sedentary work to involve:

8               lifting no more than 10 pounds at a time, and occasionally lifting or carrying
                articles like docket files, ledgers and small tools. Although a sedentary job
9               is defined as one which involves sitting, a certain amount of walking and
                standing is often necessary in carrying out job duties. Jobs are sedentary if
10              **walking and standing are required occasionally** and other sedentary
                criteria are met.
11

12  20 C.F.R. § 404.1567 (emphasis added).  The Commissioner has interpreted "occasionally" to mean

13  "generally . . . no more than about 2 hours of an 8-hour workday."  Social Security 96-9p.  Dr.

14  Wood's opinion is at best ambiguous about whether Plaintiff can stand or walk for 2 hours in an 8

15  hour workday.  In one place, he states that Plaintiff could possibly stand or walk for up to 2 hours,

16  but also said that assessment "might be stretching it."  A.R. 580.  In another portion of the opinion,

17  he wrote that Plaintiff cannot stand for more than 15 minutes, walk for more than 10 minutes, or sit

18  for more than 2 hours total in an 8 hour workday.  A.R. 584.  The ALJ did not reconcile these

19  statements, or in fact discuss them at all.  Since Dr. Wood's opinion is ambiguous, it was improper

20  for the ALJ to accord it great weight without further developing the record.  *Tonapetyan*, 242 F.3d

21  at 1150 ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for

22  proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry."

23  (internal quotation marks and citation omitted)).

24         Accordingly, Dr. Wood's opinion does not support the ALJ's finding that Plaintiff is capable

25  of performing the full range of sedentary work.

26         **B.      Credibility**

27                  **1.      Legal Standard**

28  In general, credibility determinations are the province of the ALJ.  "It is the ALJ's role to

8

resolve evidentiary conflicts.  If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld."  *Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984) (citations omitted).  An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (citing 42 U.S.C. § 423(d)(5)(A)).  However, if an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so.  *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).  In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what evidence undermines the claimant's complaints."  *Id*. at 972 (quotations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (stating that an ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony").  The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281 (citations omitted).  First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted).  Absent affirmative evidence that the claimant is malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's testimony.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The Ninth Circuit has reaffirmed the "specific, clear and convincing" standard applicable to review of an ALJ's decision to reject a claimant's testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014).

United States District Court
Northern District of California

### 2.    Analysis

At the hearing, Plaintiff testified that he used to be a postal worker but had to stop working when he injured his right foot.  A.R. 71-72.  He said that he currently can only walk about 4 to 10 yards at a time and must use a cane.  A.R. 78.  He then has to break for 10 to 15 minutes.  A.R. 78.  Plaintiff also testified that he can only sit for about 40 minutes at a time before he starts to lose feeling in his feet.  A.R. 78.  He explained that he has to take a 10 to 15 minute break laying down before resuming sitting.  A.R. 79.

The ALJ determined that the medical evidence does not support Plaintiff's claimed limitations.  A.R. 21.  He relied on the same portions of the record discussed above in connection with Dr. McCraven's opinion: namely, that Plaintiff received a conservative course of treatment and imaging studies showed his condition was "stable."  A.R. 21.  As explained above, the ALJ mischaracterized these portions of the medical evidence and therefore cannot rely on his interpretation of those sections to discredit Plaintiff's testimony.

Therefore, the ALJ failed to offer specific, clear, and consistent reasons to reject Plaintiff's testimony.

### C.    Remaining Issues

Plaintiff also argues that the ALJ erred in assessing his RFC and in the step five finding.  As discussed above, the ALJ erred in weighing the medical opinions and in discrediting Plaintiff's credibility.  These errors were not harmless because they could impact the ALJ's determination on other steps of the analysis.  For example, if the ALJ assigns different weight to the medical opinions, he may assess a more restrictive RFC, which may impact the ultimate finding that Plaintiff is not disabled.

On remand, the ALJ should revisit these issues and make findings consistent with this order and the regulations.

## VI.    CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is granted and the Commissioner's cross-motion is denied.

**United States District Court**
**Northern District of California**

1
2
3          **IT IS SO ORDERED.**
4     Dated: November 3, 2020
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Judge Donna M. Ryu
United States Magistrate Judge